WILBER P. GARABRANT, complainant,

*v.*

C. WILBER CALLAWAY et al., defendants.

[Decided February 2d, 1932.]

*Mr. W. Theodore Vanderlipp,* for the complainant.

*Messrs. Sorg, Duncan & Bailey,* for the defendants.

CHURCH, V. C.

The facts in this case, as stipulated by counsel, are as follows:

The testatrix made her will on August 7th, 1927, and died February 4th, 1929. On both said dates she owned two (and

only two) certificates of Public Service Corporation of New Jersey no par common stock—one for twenty shares; the other for twenty-two shares. On September 28th, 1926, Public Service Corporation had split up its common stock on the basis of three new no par shares for each of the old. Testatrix never surrendered her certificates for forty-two shares and there is no evidence to show whether or not she knew of the split-up.

The only mention made by testatrix in her will of said Public Service common stock is in the following paragraphs:

"Third: I give and bequeath to my niece, Gertrude L. Callaway, my piano and piano stool, ten (10) shares of common stock of the Public Service Corporation of New Jersey, and also my large solitaire diamond ring and gold bracelet with seven sapphires in it.

"Fourth: I give and bequeath to my nephew, C. Wilber Callaway, ten (10) shares of common stock of the Public Service Corporation of New Jersey.

"Sixth: I give and bequeath to my friend, Anna D. Babbitt, now residing at No. 29 Convent Avenue, New York City, New York, five (5) shares of common stock of the Public Service Corporation of New Jersey.

"Seventh: I give and bequeath to The Baptist Home Society of New Jersey, at No. 285 Roseville Avenue, Newark, New Jersey, ten (10) shares of common stock of the Public Service Corporation of New Jersey, in memory of my mother, Anna Putnam Garabrant.

"Eighth: I give and bequeath to my cousin, Caroline E. Totten, now residing at No. 223 North 7th Street, Newark, New Jersey, seven (7) shares of common stock of the Public Service Corporation of New Jersey."

The executors of said will were testatrix's brother, the complainant Wilber P. Garabrant, her sister Anna Lillian Callaway, and her nephew C. Wilber Callaway.

In April, 1929, said two certificates for forty-two shares of Public Service common stock were endorsed over by the three executors and turned over to Oscar C. Kunze, proctor for the estate, and by him delivered to Public Service Corporation for transfer, together with a copy of the will. The stock transfer department of the Public Service Corporation filled in the assignments to show transfer thereof as follows: ten shares to Gertrude L. Callaway; ten shares to C. Wilber Callaway; five shares to Anna D. Babbitt; ten shares to the

Baptist Home Society of New Jersey, and seven shares to Caroline E. Totten. Later, upon the Public Service Corporation discovering that the certificates represented the old stock, which had since been divided up three for one, its transfer department struck out the number of shares in each of the respective assignments above set forth and increased the same by three times the amount, in order to show the newly divided stock, and the new certificates were issued for the treble amount, namely, for a total of one hundred and twenty-six shares instead of forty-two shares, and the certificates therefore were delivered by the corporation to Mr. Kunze, who in turn distributed them to the said legatees in April, 1929.

The evidence also is uncontradicted that complainant, who is residuary legatee as well as co-executor, did not know and was not informed of the increased distribution by the Public Service Corporation and began this action shortly after he found it out.

The first question to decide is whether the bequests mentioned in paragraphs 3, 4, 6, 7 and 8 were general or specific.

The fourth, sixth, seventh and eighth paragraphs are clearly general legacies. Defendants contend, however, that the third is specific because in it testatrix bequeaths *"my* piano and piano stool" and *"my* large solitaire diamond ring" along with "ten (10) shares of common stock of the Public Service Corporation of New Jersey"—thereby meaning to imply *"my"* ten shares, and because of this *"my"* should be read into the other paragraphs, thus making them specific also. I cannot follow this reasoning. In the first place, testatrix did not have one certificate for ten shares. She had only two—one for twenty, the other for twenty-two. Again, if she had intended to bequeath specifically, why did she say *"my* piano" and *"my* ring" and in the same clause and the subsequent clauses omit *"my"* from her references to the stock? I cannot find in the testimony any facts and circumstances affecting the situation at the time the will was made which would lead me to assume, in the face of the plain expression of the will, that these legacies were meant

to be specific. There is no proof as to whether or not testatrix knew of the "split-up." If she did, it was clearly her intention to leave only the shares mentioned in the paragraphs above cited. Assuming that she did not, this court must be guided by the wording of the will and not speculate as to what testatrix would have .done had she known she owned these extra shares.

Other paragraphs of the will (eleventh and twelfth) are cited by defendant as showing an intent to make a specific legacy. That may be true as to the articles mentioned in those paragraphs but in my opinion they stand alone and have no bearing whatever on the intention of the testatrix as to the disposition of the Public Service stock.

Defendants argue that the intent of the testatrix was to bequeath all her Public Service stock in the paragraphs above cited, regardless of its amount. I do not believe this was her intention for the reasons stated above. I cannot see that any irreparable damage to defendants has been proved by reason of their receiving this extra stock and now being required to account for it.

The defense of laches is answered by the fact that complainant brought this action within a reasonable time after he became aware of the situation. As to estoppel, it is contended that as executor complainant signed the transfer of the forty-two shares. He knew nothing, as conclusively appears, about the increased amount of the shares. His co-executor, or his proctor, was informed about it by the Public Service Corporation and the corporation changed the transfer over the executor's signature from forty-two to one hundred and twenty-six shares. By what authority does not appear. I cannot see how this can be held as estoppel against one who did not transfer more than forty-two shares and was never informed that the document he had signed had been altered after his signature had been affixed. It seems to me that it was the duty of the proctor of the estate or of the co-executors to inform complainant of the increase in the number of shares and give him the opportunity—not only as executor but as residuary legatee—to consider the matter.

It is unnecessary to discuss any further points raised in the briefs.

I will advise a decree holding these legacies to be general,. that the legatees repay to the estate the shares received by them over and above those specified in the will, and that they account for *mesne* profits..